**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2182-24

BREANNE CALICIOTTI,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

PROGRESSIVE GARDEN
STATE INSURANCE
COMPANY,[1]

    Defendant-Respondent/
    Cross-Appellant.

_____

        Argued June 3, 2026 – Decided July 16, 2026

        Before Judges Berdote Byrne and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. DC-006868-24.

        Ryan Milun argued the cause for appellant/cross-respondent (The Milun Law Firm, LLC, attorneys;

---

[1] We note in the briefs submitted as well as the trial court order on appeal defendant is Drive New Jersey Insurance Company, i/p/a Progressive Garden State Insurance Company.

Ryan Milun, of counsel and on the brief; Susan Ferreira, on the brief).

Michael W. Cartelli argued the cause for respondent/cross-appellant (Tango, Dickinson, Lorenzo, McDermott & McGee, LLP, attorneys; Michael W. Cartelli, of counsel; David A. Siegel, on the briefs).

PER CURIAM

Plaintiff Breanne Caliciotti appeals from a February 28, 2025 order dismissing her insurance coverage action against Drive New Jersey Insurance Company ("Drive"), claiming the trial court erred when it found she required an expert to meet her burden of establishing coverage pursuant to the policy. Drive cross-appeals, arguing the trial court erred when it denied its summary judgment application. We conclude the trial court erred in dismissing the complaint because plaintiff set forth a prima facie case of coverage, which shifted the burden to defendant to prove the applicability of an exclusion. Therefore, we reverse the judgment of dismissal, affirm the denial of summary judgment, and remand for a new trial.

I.

While driving on the Harlem River Drive in New York, plaintiff's 2015 Land Rover suddenly lost power and her engine began to smoke. Later

2

investigation revealed the cause of the failure was a "blown head gasket" that caused substantial damage to the engine and rendered the vehicle inoperable.

Plaintiff was insured by Drive under a policy that included comprehensive coverage. According to that policy, Drive agreed to:

> [p]ay for sudden, direct and accidental loss to a:
>
> 1. covered auto, including an attached trailer; or
>
> 2. non-owned auto; and its custom parts or equipment,
> that is not caused by a collision.

The policy also included "Exclusion [No. 8]," under which Drive would not pay for any loss to a vehicle that is "due and confined" to:

> a. [w]ear and tear,
>
> b. [f]reezing,
>
> c. [m]echanical, electronical, or electronic breakdown
> or failure; or
>
> d. [r]oad damage to tires.

After plaintiff notified Drive of the incident, its adjuster estimated the repair cost at $15,815.20. Drive also denied plaintiff's coverage claim in a letter, briefly concluding "our investigation of the damage to your vehicle has determined the following: mechanical wear and tear."

3

After plaintiff sued for declaratory judgment to compel Drive to cover her vehicle's loss, Drive moved for summary judgment, and plaintiff cross-moved for the same relief. The motion judge denied both applications and concluded a genuine issue of material fact existed as to the cause of the head gasket's failure and whether the damage qualified as "wear and tear" under the policy language.[2]

Early in discovery, as part of its interrogatory responses, Drive identified Ken Tuer, a Drive employee who authored the repair estimate, to testify. However, because Tuer was not available on the trial date, Drive substituted Matthew Silverman, a Drive field appraiser supervisor, as its witness.

At trial, plaintiff testified about the specific circumstances surrounding the incident. She explained that while driving home from a baseball game with her daughter, her vehicle unexpectedly began to slow down. Shortly thereafter, her daughter noticed smoke coming from beneath the hood. As plaintiff searched for a safe place to pull over, the car suddenly came to a complete stop, leaving them stranded on a two-lane highway. Prior to this incident, plaintiff stated that she had never experienced any mechanical issues

---

[2] Plaintiff has not appealed the trial court's denial of her summary judgment motion.

4

with her vehicle, although she previously had some repairs performed, including fixing an oil leak and replacing a hose.

After plaintiff rested her case, Drive moved to dismiss the complaint, arguing plaintiff failed to prove a "sudden, direct and accidental" loss, that was required by the policy's coverage provision. The trial judge disagreed:

> [W]e've heard testimony from [p]laintiff herself that this was a sudden . . . occurrence. It was accidental. This is a claim under the comprehensive portion of this policy. And I tend to agree. I'm looking at the policy language right here and it is inclusive. It is not exclusive. It says a loss not caused by collision includes.
>
> Nowhere in the policy does it say that it excludes. It just gives examples. And so I think that the policy language on its face does not preclude the claim based on the testimony we've heard. And so I think there is enough for [p]laintiff to proceed on.

After its motion was denied, Drive called Silverman as its sole witness. Silverman testified he was familiar both with plaintiff's claim and Drive's denial of it because the loss was not deemed "direct, sudden, and accidental." Silverman noted "there's two exclusions under exclusion [eight] that state one is wear and tear and one is mechanical failure." Drive found "the engine needed to be replaced. [T]here was no signs of any direct, sudden – direct,

sudden or accidental damage which is when, at that point, it was determined to be wear and tear."

Counsel for defendant probed Silverman's understanding of the extent of Drive's coverage:

> Q. In the event that there's a breakdown resulting from a defect in a vehicle, would [Drive] provide coverage in that instance?
>
> A. Typically not. It would fall under mechanical failure.
>
> Q. In the event that there was an unexpected breakage of a component inside a vehicle, would [Drive] provide coverage under comprehensive?
>
> A. [I]t would depend on the situation. [L]ike for the example if a tire were to blow out, we would not cover the tire. However, we could cover the subsequent damages caused by the tire.
>
> . . . .
>
> Q. And so in the event that there was something internal [within the] engine, like such as is being alleged here, a head gasket, if that were to blow, would then [Drive] not cover the head gasket but cover the engine?
>
> A. No, [because] it's an engine as itself. It's an engine assembly. We wouldn't cover the engine.
>
> Q. Are [] the head gasket and the engine seen as one component by [Drive's] standards then?

6

A. Yeah. We're not typically writing for internal engine components. If there's a failure, like in this case, the estimate reflects an engine assembly.

Later in the testimony, defendant's counsel attempted to qualify Silverman as a "mechanical expert" based on his training and expertise. According to defense counsel, Silverman's report would serve as the estimate in this case, and his testimony would address the trial court's question, raised during the summary judgment motion, regarding the existence of "wear and tear."

Following plaintiff's counsel's objection, the trial court observed Silverman:

didn't prepare this report. He's not the [appraiser] who went out and examined this vehicle . . . [so] how can this witness give expert testimony as to another appraiser's report that goes to the crux of the issue?

. . . .

I'm not aware . . . that one expert can testify as to the contents of another expert's report that they have no personal knowledge of. How is that helpful to the [c]ourt when it's not his appraisal?

In response, Drive's counsel argued the estimate was a business record and there might "be times where someone of similar stature within the company would come and provide testimony as to what was done in the

7

regular course of business . . . as to the findings of what was going on with a vehicle and why a claim was denied." The court sustained plaintiff's objection and barred Silverman from providing expert testimony about the mechanical aspects of the vehicle.

In an oral opinion, the trial court ultimately found in Drive's favor and dismissed plaintiff's complaint:

> Ms. Caliciotti testified clearly that . . . the occurrence was sudden. She was driving on the Harlem River Drive. The vehicle began smoking. It broke down.
>
> . . . .
>
> I find that it is incumbent on . . . [p]laintiff to show damages for which it's entitled to recover under the terms of this policy. That is the <u>Tauriello vs. Aetna</u> case, 14 N.J. Super. 530 (1951). It is our seminal case.
>
> Once . . . [p]laintiff has satisfied its burden, the burden then shifts to the insured to establish that the damages fall within the exclusionary provisions of the policy.
>
> . . . .
>
> Plaintiff's sole proof offered in support of the idea that her damages were covered were here testimony of – of the breakdown of the vehicle. Plaintiff's testimony alone I find is insufficient to sustain the burden. Without the benefit of the testimony of – of an expert or any additional proofs as to the mechanical or technical breakdown of the vehicle, I find that

[p]laintiff cannot sustain her burden under the Tauriello case that I've previously cited.

And so for those reasons that I've stated, I am denying – I'm finding [p]laintiff has not met her burden by a preponderance of the evidence and I am finding in favor of [d]efendant. It is a no cause of action on this matter.

Plaintiff appeals the final order dismissing her complaint, and Drive cross-appeals the denial of summary judgment.

## II.

On appeal, plaintiff argues the trial court improperly shifted the burden of proof to plaintiff and failed to require defendant to prove a policy exclusion barred coverage. We agree.

Plaintiff contends that, having established a prima facie case of a covered loss under the policy, the trial court should have shifted the burden of proof to defendant to establish that a coverage exclusion applied. Although we do not dispute the trial judge's factual findings in this matter, we conclude the court misapplied the law regarding plaintiff's initial burden of production.

The "[i]nterpretation of an insurance policy . . . presents a legal question, which we review de novo." Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, 450 N.J. Super. 400, 406 (App. Div. 2017) (citing Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597,

9

604 (2012)). "In assessing the meaning of provisions in an insurance contract, courts must first look to the plain meaning of the language at issue." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines No., 229 N.J. 196, 207 (2017) (citing Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "If the language is clear, that is the end of the inquiry." Ibid. (quoting Chubb Custom Ins. Co.,195 N.J. at 238). "Thus, 'in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one he purchased.'" Ibid.

"[C]lauses that extend coverage are to be viewed broadly and liberally." Gibson v. Callaghan, 158 N.J. 662, 669 (1999) (citing Mazzilli v. Acc. & Cas. Ins. Co., 35 N.J. 1, 8 (1961); Cobra Prods., Inc. v. Federal Ins. Co., 317 N.J. Super. 392, 400 (App. Div.1998)). Further, strict interpretation is applied to clauses of exclusion in insurance policies which are designed to limit the protection afforded. Mazzilli, 35 N.J. at 8 (1961); Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970). In short, "[p]rinciples of insurance contract interpretation 'mandate [a] broad reading of coverage provisions, [a] narrow reading of exclusionary provisions, [the] resolution of ambiguities in the insured's favor, and [a] construction consistent with the insured's

reasonable expectations.'" Hampton Med. Grp., P.A. v. Princeton Ins. Co., 366 N.J. Super. 165, 172 (App. Div. 2004) (quoting Search EDP, Inc. v. Am. Home Assurance Co., 267 N.J. Super. 537, 542 (App. Div. 1993)). "If there is any doubt, uncertainty or ambiguity in the phraseology of a policy, or if the phraseology is susceptible to two meanings, the construction favoring coverage must be adopted." Hampton Med. Grp., P.A., 366 N.J. Super. at 172-73 (quoting Aetna Ins. Co. v. Weiss, 173 N.J. Super. 292, 296 (App. Div. 1980)).

Generally, in an action for insurance coverage, the insured must establish whether a particular claim falls within the basic terms of the policy. IMO Indus. Inc. v. Transamerica Corp., 437 N.J. Super. 577, 624 (App. Div. 2014); S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co., 388 N.J. Super. 592, 603 (App. Div. 2006); Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 377 (App. Div. 1996). Accord Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co., 387 N.J. Super. 434, 441 (App. Div. 2006) (noting that "if there [were] no coverage under the insuring clauses, there is no need to consider whether coverage is negated by the exclusions").

Once it is shown a claim falls within a policy's scope of coverage, the insurer bears the burden of establishing an exclusionary provision of the policy

A-2182-24

applies.  Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022); Flomerfelt v. Cardiello, 202 N.J. 432, 442 (2010).

### A.

The issue before us is whether plaintiff has presented sufficient evidence to meet her burden of making a prima facie showing her loss triggered coverage under her insurance policy.  The trial court dismissed plaintiff's complaint on the grounds that she failed to provide expert testimony on causation to establish coverage.  We conclude this was an error of law.  We agree with the trial court's finding that plaintiff submitted sufficient evidence to satisfy the policy's definition of "sudden, direct, and accidental."  Accordingly, the burden should have shifted to Drive to prove that wear and tear or mechanical failure were the cause of the incident and coverage was barred by a policy exclusion.

In Part III "Insuring Agreement – Comprehensive Coverage," plaintiff's policy provides, "[i]f you pay the premium for this coverage, [Drive] will pay for sudden, direct and accidental loss to a . . . covered auto . . . that is not caused by collision."  Comprehensive coverage:

> [is] exactly that—a comprehensive, inclusive, all-risks coverage designed to encompass all direct and accidental loss to the insured vehicle except for losses that were excluded by exceptions, exclusions or other

12

coverage limitations. Typically, comprehensive excise[s] (or except[s]) only those losses caused by the insured's vehicle collision or upset. The coverage [is] also subject to exclusions for depreciation, wear and tear, or mechanical breakdown. An insured [is] given the option of purchasing comprehensive or collision or both. When the insured purchase[s] both, the insured vehicle [is] protected from nearly all fortuitous perils that could befall a motor vehicle.

[6 New Appleman on Insurance, Law Library Edition, § 62.03 (2026).]

Therefore, as the trial court correctly noted, recovery is dependent upon a showing the loss was not caused by a collision and that it was "sudden, direct and accidental."

The three operative words – sudden, direct, and accidental – are not defined in the policy which Drive issued to plaintiff. Therefore, we look to the plain meanings of those terms respectively. Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008); Daus v. Marble, 270 N.J. Super. 241, 251 (App. Div. 1994).

The term "sudden" is defined as: (1) "marked by or manifesting abruptness or haste"; (2) "made or brought about in a short time"; and (3) "an unexpected occurrence: emergency." Merriam-Webster's Collegiate Dictionary, 1248. In this case, plaintiff testified she was driving on the Harlem River Drive and noticed the car slowed despite her foot being on the

13

gas. Her daughter then observed smoke coming from the hood. The vehicle abruptly came to a complete stop, leaving them stranded in the travel lane. This sequence of events fits squarely within the ordinary meaning of the term "sudden."

New Jersey applies the proximate cause standard for determining whether a loss qualifies as "direct" in the insurance context. See Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 259 (2004) (holding that "[i]n view of the prevailing approach taken by courts in New Jersey and elsewhere to defining direct loss, in whatever type of policy that term arose, we adopt the conventional proximate cause test as the correct standard to apply . . . .") "According to the proximate-cause test, '[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.'" Search E.D.P., Inc., 267 N.J. Super. at 543 (quoting 5 Appleman, Insurance Law and Practice § 3083 at 309).

The proximate cause of the loss here was the sudden failure of the head gasket, which immediately resulted in substantial damage to the engine and rendered the vehicle inoperable. There was no evidence of any intervening nor

14

unrelated causes. As plaintiff testified, "the engine got destroyed from the head gasket." Here, the parties do not dispute that the engine was damaged due to the blown head gasket. Accordingly, plaintiff established she suffered a "direct loss" to her engine.

Our well-settled jurisprudence defines the term "accidental" to mean an event that is unintended or unexpected. See Property Cas. Co. of MCA v. Conway, 147 N.J. 322, 327 (1997) (second alteration in original) (omissions in original). Plaintiff's testimony establishes the loss was accidental. The loss was unexpected, occurred suddenly, and was not the result of any intentional act nor neglect.

Based on the credible testimony provided by plaintiff regarding the circumstances of the incident, and considering the legal definitions relevant to the trigger of coverage, we conclude the trial court was correct in finding plaintiff proved the loss was sudden, direct and accidental.

We part ways, however, with the trial court when it required plaintiff to additionally prove exclusions did not apply. Because plaintiff proved a prima facie case of coverage, it follows the trial court should have shifted the burden to defendant to prove the incident was excluded from coverage under the policy. See Norman, 251 N.J. at 552; Flomerfelt, 202 N.J. at 442; Burd, 56

15                                                                      A-2182-24

N.J. at 399; United Rental Equip. Co., 74 N.J. at 99 ("When an insurance carrier puts in issue its coverage of a loss under a contract of insurance by relying on an exclusionary clause, it bears a substantial burden of demonstrating that the loss falls outside the scope of coverage."). It was defendant's burden to provide expert testimony as to the cause of the head gasket failure, not plaintiff's.

III.

In its cross-appeal, Drive argues that the trial court erred in denying its motion for summary judgment, asserting that there was no genuine issue of material fact as to whether the damage to plaintiff's vehicle fell within an exclusion to a policy which Drive claims is clear and unambiguous. We disagree.

Plaintiff argued summary judgment was properly denied because the policy exclusion for "wear and tear" and mechanical breakdown are ambiguous and do not bar coverage for consequential engine damage following a sudden head gasket failure:

> [Drive] has presented no evidence to this court to suggest that the blown head gasket was a cause- was caused by wear and tear. There's nothing. There's no report from an expert. There's no report from a mechanic. There's no certification from an adjuster who specializes in . . . mechanics or engines or

16

whatever the case may be, so they submit it to the [c]ourt to say here's how we're going to establish our burden of proof.

The motion judge agreed with plaintiff and concluded:

> The [c]ourt finds that whether the damage to [p]laintiff's head gasket is classified as "wear and tear" is an unresolved material fact to be determined at trial. [Drive's] motion does not contain any proofs convincing the [c]ourt that damage to the head gasket qualifies as "wear and tear." As such, summary judgment is inappropriate at this stage and [Drive's] motion is denied.

Additionally, the court noted "[Drive] hasn't given me any facts, other than to say this is the policy language, we say that it falls within the exclusion."

Our review of a trial court's grant of a motion for summary judgment is de novo. Christakos v. Boyadjis, 262 N.J. 447, 462 (2026). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023) (internal quotation marks omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (internal quotation marks omitted) (quoting R. 4:46-2(c)).

Following our review of the record of the summary judgment proceedings, we find the trial court correctly denied Drive's application. Despite Drive's argument that the issue should be resolved as a matter of law, the trial judge correctly determined a necessary factual predicate was missing—specifically how the head gasket might have failed and whether that part of the vehicle was susceptible to "wear and tear." We note this term is not defined in the policy. Similarly, the original denial letter from Drive to plaintiff neither detailed the extent of the evaluation of the vehicle, nor explained why, in Drive's opinion, the part was damaged by wear and tear and whether this condition caused the loss for which plaintiff sought coverage.

This determination must rely on "specialized expertise" that only a mechanic or one with comparable training and experience can provide, as the condition at the heart of this controversy exceeds the common knowledge of an ordinary factfinder. See generally State v. Berry, 140 N.J. 280, 292 (1995) (Expert testimony is required "if the general subject matter at issue, or its

18

specific application, is one with which an average [factfinder] might not be sufficiently familiar[.]"). "A motor vehicle is not a simple uncomplicated instrumentality. Its parts require periodic maintenance, minor adjustments and occasional major repairs or replacements." Ford Motor Credit Co. LLC v. Mendola, 427 N.J. Super. 226, 237 (2012) (citing Scanlon v. Gen. Motors Corp., 65 N.J. 582, 599 (1974)). Over the years, the "automobile has increased in mechanical and electronic complexity, while the public's familiarity with automotive mechanics has diminished." Ibid. Without specialized expertise, a factfinder would be left to speculate about the nature of the part in question, its purpose, its interaction with other mechanical components of the vehicle, and whether it might be susceptible to failure—and, if so, under what conditions. Similarly, the failure of the engine might have been caused, among many other conditions including negligent repair, improper maintenance, improper operation by the driver, or a manufacturing defect. Id. at 237-38. The absence of evaluative testimony is fatal to Drive's summary judgment application.

Since we remand for a new trial, Drive's remaining contentions are rendered moot and lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The order denying summary judgment is affirmed, the judgment of dismissal is vacated, and the matter is remanded for a new trial. We leave it to the trial court to schedule a case management conference before the new trial to address or resolve any additional discovery that might be necessary as a result of our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division